IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

| | |
|---|---|
| ESTATE OF JORDAN VIDANA through its personal representative CURTISS N. LEIN, JORDAN VIDANA, JR., JADEN VIDANA, JAYLEN VIDANA, and SANDER KING, through their guardian ad-litem SAMUEL LAWTON, | |
| Plaintiffs, | ORDER |
| v. | 23-cv-82-jdp |
| LUIS REYES GOMEZ, HP TRANS CORP, DRIVE NEW JERSEY INSURANCE COMPANY, and SENTRY SELECT INSURANCE COMPANY, | |
| Defendants. | |

---

| | |
|---|---|
| ESTATE OF LEONARD ROBERT HOPINKA through its personal representative JOSHUA MELTON, HELES-WV-CEXI-WI HOPINKAWHITECLOUD and NO-KO-SELVS-TE HOPINKA WHITECLOUD through their guardian ad-litem VICTORIA L. DAVIS DÁVILA, ESTATE OF TYLER EDWARD DECORAH through its personal representative JUSTIN HALL and KENDRICK DECORAH through her guardian ad-litem ROBERT PLEDL, | |
| Plaintiffs, | ORDER |
| v. | 23-cv-486-jdp |
| LUIS REYES GOMEZ, HP TRANS CORP, DRIVE NEW JERSEY INSURANCE COMPANY, and SENTRY SELECT INSURANCE COMPANY, | |
| Defendants. | |

---

These consolidated cases arose out of the same car accident that occurred in January 2022 in Black River Falls, Wisconsin. Plaintiffs are the estates and minor children of three men who died in the accident. All three men were in the same car: Leonard Robert Hopinka was the

driver, Jordan Vidana was a passenger and also the owner of the car, and Tyler Edward Decorah was a passenger. Plaintiffs allege that defendant Luis Reyes Gomez was negligently driving his truck and caused the accident.

Plaintiffs move for appointment of three guardians ad litem: Samuel Lawton for the minor children of Jordan Vidana (Jordan Vidana, Jr., Jayden Vidana, Jaylen Vidana, and Sander King), Victoria Davis Dávila for the minor children of Leonard Hopinka (No-Ko-Selvs-Te Hopinka Whitecloud and He-Les-Wv-Cexi-Wi Hopinka-Whitecloud), and Robert Pledl for the minor child of Tyler Decorah (Kendrick Decorah). Dkt. 26; Dkt. 27; Dkt. 28 (in case no. 23-cv-82-jdp). In a previous order, the court agreed with plaintiffs that guardians ad litem were appropriate in this case, but the court deferred a decision on the motion until it received more information about the guardians and the structure of their agreements.

The court has reviewed the new information submitted by plaintiffs, and it has also taken a closer look at other filings in the case. This review raised questions about not just the guardian ad litem appointments but also about the way plaintiffs' counsel is proceeding more generally. The court will highlight several concerns that the court has about potential conflicts of interest involving plaintiffs' counsel, the guardians ad litem, and one of the personal representatives. The court will also note some other questions and concerns about the guardians ad litem. The court will hold a conference with plaintiffs' counsel, the estate's representatives, the guardians ad litem, and the children's legal guardians to allow them to address the court's concerns. Because the court's concerns do not involve the substance of the case and could involve confidential matters, the conference will be held ex parte.

**Conflicts of interest.** The court's first concern is that the same lawyer, Matthew Curtiss Lein, represents all the plaintiffs in both cases, which raises a potential conflict of

2

interest. There is no categorial rule precluding a lawyer from representing all plaintiffs in a case. But Rule 1.7 of both the Model Rules of Professional Conduct and the Wisconsin Rules of Professional Conduct place limits on such representation. Among other things, those rules prohibit common representation unless the lawyer reasonably believes that he will be able to provide "competent and diligent representation" to all affected clients and unless those clients give their informed consent. The court has concerns about both of those requirements.

As for whether the same lawyer could provide competent representation to all plaintiffs, the concern is that the estates and children of each decedent are not in the same position. (For simplicity, the court will refer collectively to each decedent's estate and children using the decedent's last name.) Defendants have asserted a counterclaim against Hopinka, alleging that he was intoxicated and driving too fast, so it was his negligence that caused the accident. Case no. 23-cv-486-jdp, Dkt. 10, at 9–10, ¶¶ 4–8. Defendants have also asserted an affirmative defense against Vidana, alleging that he was negligent for allowing Hopinka to drive his car while Hopinka was impaired. Case no. 23-cv-82-jdp, Dkt. 5, at 6–7, ¶ 6.

The above allegations create potential conflicts in at least two ways. First, Vidana and Decorah have potential negligence crossclaims against Hopinka, and Decorah has a potential negligence crossclaim against Vidana. If plaintiffs are all represented by Lein, they forfeit any crossclaims, and they are forced to adopt Hopinka's view that defendants are primarily responsible for the accident, regardless of what the evidence shows. Second, plaintiffs could be in different positions during settlement negotiations. Based on defendants' allegations about Hopinka's and Vidana's negligence, it is plausible that any settlement offer by defendants could be significantly lower for Hopinka and Vidana than for Decorah or even that defendants would

3

offer a settlement for Decorah or Vidana only. This would place Lein in the difficult position of accepting an offer for the benefit of one client to the detriment of another.

Even assuming that plaintiffs could waive these conflicts, there is a question about whether plaintiffs gave their informed consent. Plaintiffs filed waivers, *see* Dkt. 39-4, but there are potential problems with the waivers. "Informed consent requires that each affected client be aware of the relevant circumstances and of the material and reasonably foreseeable ways that the conflict could have adverse effects on the interests of that client." Model Rule 1.7, comment 18. The waivers that plaintiffs submitted acknowledge that they "might have viable cross claims against each [other]." The justification for the waiver is that a cross claim would not have "significant monetary value," but the waiver doesn't explain what that means or what information it is based on, and it doesn't identify what the potential claims are. The waiver also does not address the different positions the different plaintiffs could have during settlement negotiations. That omission implicates not just Rule 1.7, but also Rule 1.8(g), which requires informed consent for negotiating an aggregate settlement for multiple clients. Plaintiffs must explain how they intend to divide up any potential settlement.

A related question is whether the proper parties signed the waivers. The proposed guardians ad litem signed the waivers on behalf of the children, but it isn't clear whether that was the proper course of action. A guardian ad litem is supposed to advocate for a child's best interest, but the guardian ad litem is not the child's legal guardian. Plaintiffs will have to explain why the guardian ad litem rather than the child's legal guardian is the proper party to sign the waiver.[1]

---

[1] There are also more technical problems with the waivers. The personal representative for Vidana's estate did not sign his waiver, Dkt. 39-4, at 4, and counsel did not submit a waiver

4

The court's second concern is about a conflict of interest between two of three guardians ad litem. Plaintiffs propose that Victoria Davis Dávila serve as a guardian ad litem for Hopinka's children and that Robert Pledl serve as guardian ad litem for Decorah's child. But both of these proposed guardians are lawyers for the same firm, Davis & Pledl, S.C. This presents a similar issue to the previous one: the interests of Hopinka and Decorah's children may not always align, so the same law firm may need to take opposing positions in the same case. Plaintiffs did not submit a waiver related to this potential conflict or even address it in their motion.

The court's third concern is about a potential conflict between plaintiffs' counsel and the guardians ad litem. Plaintiffs submitted the guardians ad litem's fee agreements, all of which state that Lein is responsible for paying the guardians at litem. Dkt. 39. Each agreement allows Lein to terminate the guardians at any time; Lein's agreement with Lawton also states that Lein "is responsible for making all the substantive decisions of your case." It isn't clear why Lein is identified as the client rather than the minor's legal guardians. Lein's situation seems analogous to the one contemplated in Rule 1.8(f), which involves fees paid by third parties. In that situation, there may be "no interference with the lawyer's independence of professional judgment." Regardless of whether it is appropriate for Lein to be identified as the client, he should not have any control over the decisions of the guardians ad litem. That is the purpose of seeking a guardian ad litem in the first place.

The court's fourth concern is a potential conflict of interest between plaintiffs' counsel (Matthew Lein) and the Vidana estate's personal representative (Curtiss Lein). It is the court's

---

from the personal representative of Decorah's estate.

understanding that Matthew Lein is Curtiss Lein's son and both work for the same law firm. This seems to raise the same type of conflict that the court has already discussed. This relationship could affect counsel's representation because of the risk that he would favor the client who is represented by his father and law partner. Plaintiffs have not submitted a waiver on this issue or explained why the potential conflict should not be disqualifying.

**Other issues.** Plaintiffs and their representatives should be prepared to address two other issues as well. First, Lein's agreement with Lawton is written as if Lein is simply hiring Lawton as his personal attorney. Other than the words "Guardian ad Litem—Vidana case," the agreement doesn't identify the purpose of the representation, Lawton's duty to the children, or even the names of the children who are the subject of the agreement. Lein and Lawton should consider modifying the agreement to tailor it to the specific needs of this case.

Second, the court still has questions about the qualifications and experience of the proposed guardians ad litem. In a case like this one, it is important that the guardians ad litem have knowledge and experience about three areas: (1) the duties of a guardian ad litem; (2) evaluating damages and settlements in wrongful death cases; and (3) setting up trusts. All three of the proposed guardians ad litem represent that they have experience working as a guardian ad litem in other cases. But only Lawton represents that he has served as guardian ad litem in personal injury cases; neither Dávila nor Pledl represent that they have any experience in wrongful death or personal injury cases. And only Dávila and Pledl represent that they have experience in setting up trusts. Counsel and the guardians ad litem will need to explain during the conference why they are qualified to serve as a guardian ad litem in a case like this one.

ORDER

IT IS ORDERED that the clerk of court is directed to schedule an ex parte video conference with plaintiffs on or after January 3 to address the issues discussed in this order. Plaintiffs are directed to make arrangements so that the guardians at litem, personal representatives of the estates, and the legal guardians of the children appear for the conference as well.

Entered December 21, 2023.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge